UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| QUENTIN M. PARKER and KATHERINE R. PARKER,<br><br>　　　　　　　　Plaintiffs,<br>　v.<br>STATE OF WASHINGTON, et al.,<br><br>　　　　　　　　Defendants. | CASE NO. C21-5258 BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants Aaron Ficek and the City of Olympia's ("City") Motion for Summary Judgment, Dkt. 41, and Plaintiffs Quentin M. Parker and Katherine R. Parker's[1] Motion to Continue Summary Judgment, Dkt. 46.

**I.　BACKGROUND**

This case arises out of the Olympia Police Department's arrest of Quentin Parker in 2019 after he responded to an internet posting that was part of a sting operation aimed at individuals targeting children online for sexual assault. Dkt. 41 at 1–2. Washington

---

[1] The vast majority of claims are brought by Quentin Parker and not by Katherine Parker. The Court refers to Quentin Parker as "Parker" throughout this Order. Where both Katherine Parker and Quentin Parker assert claims, they are referred to as "the Parkers."

State Patrol's Missing and Exploited Children's Task Force ("MECTF") partnered with Operation Underground Railroad, a private nonprofit group out of Utah, to investigate and conduct these sting operations. Dkt. 1-1, ¶ 1.3.

In this case, Detective Sgt. Carlos Rodriguez created a fictitious profile with the username "RowdyRhonda720" on the social network SKOUT and posted the following ad:

> New in town. Single mom. I have three girls to share. Looking for like-minded people that are into ddlg/incest/young taboo. No curious wanted, Only serious. Young fun. Taboo.

*Id.*, ¶¶ 4.10–4.12. Parker asserts that ddlg stands for "Daddy Dom / Little Girl" and that it denotes "a relationship in which one person is the caregiver or 'daddy' and the other is childlike." *Id.* ¶ 4.13. He asserts that "[i]t is NOT a relationship between an actual father and daughter or any minor child." *Id.* According to Parker, "ddlg" refers to role play, and that was his understanding at that time he responded to the ad. *Id.* ¶¶ 4.13–4.16.

Parker responded to the ad and agreed to meet with what he believed to be an adult female behind the username "RowdyRhonda720," who was actually Detective Kristi Pohl. *Id.* ¶¶ 4.19, 4.23. Parker traveled to the agreed meeting spot and entered the residence, at which point he was arrested by Washington State Patrol Troopers Travis Calton, Maurice Rincon, William Steen, and James Taylor. *Id.* ¶ 4.24. The officers took him to a Washington State Patrol office where he was interrogated by Washington State Patrol Detective Darrell Noyes and City of Olympia Officer Aaron Ficek. *Id.* ¶ 4.25.

During the interrogation, Parker told Noyes and Ficek that he believed the advertisement to which he responded was for role play only and that no actual children

were involved. *Id.* ¶ 4.26. Parker was charged in Thurston County Superior Court with two counts of Attempted Rape of a Child in the First Degree and one count of Attempted Rape of a Child in the Second Degree. *Id.* ¶ 4.29. All charges against Parker were later dismissed without prejudice by the Thurston County Prosecuting Attorney's Office. *Id.* ¶ 4.35. Neither party provides a reason for the dismissal.

The Parkers sued the State of Washington, the Washington State Patrol, Carlos Rodriguez, Kristi Pohl, Darrell Noyes, Travis Calton, Maurice Rincon, William Steen, James Taylor, the City, Aaron Ficek, Operation Underground Railroad, Inc., Thurston County, and Shawn Horlacher in Thurston County Superior Court. *See generally* Dkt. 1-1. They sued Rodriguez, Pohl, Noyes, Calton, Ricon, Steen, Taylor, and Ficek for illegal seizure and arrest and the City under *Monell* for deficient training of Ficek. *Id.* ¶¶ 5.1–5.4. They sued Calton, Rincon, Steen, and Taylor for unnecessary force and failure to prevent civil rights violations. *Id.* ¶¶ 6.1–7.3. Those four, along with Rodriguez, were also sued for judicial deception and malicious prosecution. *Id.* ¶¶ 8.1–9.5. The Parkers sued all Defendants for outrage, negligent infliction of emotional distress, false arrest, negligence, and abuse of process. *Id.* ¶¶ 10.1–13.4, 15.1–15.5. They also sued the Washington State Patrol, Rodriguez, and Underground Railroad for defamation. *Id.* ¶¶ 14.1–14.5. Defendants properly removed the case to this Court. Dkt. 1. The Parkers seek compensatory damages, punitive damages from the individual defendants, and costs and fees. Dkt. 1-1 at 21.

Ficek moves for summary judgment on all claims against him, arguing that he is entitled to qualified immunity on Parker's Fourth Amendment claims and that the state

tort claims fail largely because he took no part in Parker's arrest. Dkt. 41. The City also moves for summary judgment on all vicarious liability claims against it based on Ficek's conduct and on Parker's *Monell* claim, which is based on Ficek's allegedly deficient training, for the same reasons. *Id.* Parker moves to continue the motion following the passing of his attorney. Dkt. 46.

While it would typically make sense to first address Parker's Rule 56(d) motion, in this case it is necessary to understand the substance of the summary judgment motion before turning to the Rule 56(d) motion. Therefore, the motions are discussed in turn.

## II.  DISCUSSION

### A.  Motion for Summary Judgment

#### 1.  Legal Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

### 2. Fourth Amendment Claims

#### a. Qualified Immunity

Ficek argues that he is entitled to qualified immunity on Parker's Fourth Amendment claims against him because he did not arrest Parker and, in any event, the officers who did arrest Parker had probable cause to arrest him. Dkt. 41 at 6–10. Parker argues that the officers did not have probable cause to arrest him because he explained in his *post-arrest* interview that he believed he was engaging in role play. Dkt. 50 at 13–14. According to Parker, Ficek "continued with the arrest" after this interview. *Id.*

Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The Supreme Court has endorsed a two-part test to resolve claims of qualified immunity: a court must decide (1) whether the facts that a plaintiff has alleged "make out a violation of a constitutional right," and (2) whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citation omitted).[2] Qualified immunity protects officers not just from liability, but from suit: "it is effectively lost if a case is erroneously permitted to go to trial," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and thus, the claim should be resolved "at the earliest possible stage in litigation," *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987).

The purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). Because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause [to arrest] is present," qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*, 483 U.S. at 631).

---

[2] In *Pearson*, the Supreme Court reversed its previous mandate from *Saucier v. Katz*, 533 U.S. 194 (2001), requiring district courts to decide each question in order. 555 U.S. at 236.

ORDER - 6

1     Parker's Fourth Amendment claim against the individual defendants is based on his arrest. Dkt. 1-1, ¶¶ 5.1–5.2. Ficek did not participate in Parker's arrest and therefore could not have violated his constitutional rights with regard to the arrest.[3] At the time Ficek conducted his interview with Parker, other officers had already arrested Parker. Ficek could not have continued an arrest that already occurred. Moreover, the Court notes without deciding that it appears from the facts presented that the arresting officers did have probable cause. Even assuming Parker only intended to engage in role play, that does not negate the fact that the officers had probable cause for his arrest before he told them he intended to engage in role play.

    Ficek did not violate Parker's Fourth Amendment rights. Therefore, Ficek's motion for summary judgment on Parker's Fourth Amendment claim is GRANTED, and those claims against Ficek are DISMISSED with prejudice.

    **b.**   *Monell* **Liability**

    The City argues that Parker failed to establish municipal liability because he failed to identify any policy or custom that caused his alleged constitutional violation. Dkt. 41 at 4–6. Parker argues that he is basing his municipal liability claim on the City's failure to adequately train employees and that the lack of training amounts to deliberate indifference. Dkt. 50 at 10–13. The City replies that Parker's *Monell* claim against it fails because there was no constitutional violation and Parker has not sufficiently alleged facts

---

[3] Because Parker failed to establish Ficek violated his constitutional right, the Court need not address the second qualified immunity question: whether that right was clearly established.

ORDER - 7

suggesting that the City's training program was deficient or that any such deficiency caused his alleged injury. Dkt. 57 at 8–9.

To set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690–91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). Under *Monell*, a plaintiff must allege (1) that a municipality employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) those customs or policies were the "moving force" behind the constitutional right violation. *Bd. of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

A municipality may be liable for inadequate police training when "such inadequate training can justifiably be said to represent municipal policy." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). A training program can result in municipal liability where the deficient program is "intended to apply over time to multiple employees" that policymakers "know or should know has failed to prevent tortious conduct by employees" or where the violation of federal rights is "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id*. (quoting *Board of Cnty. Com'rs*, 520 U.S. at 407–09).

1	Parker fails to satisfy the first element of a *Monell* claim: that a municipal
2	employee, specifically Ficek, violated his constitutional rights. Parker alleges that the
3	City "failed to take necessary, proper, or adequate measures in order to prevent the
4	violation of Plaintiff's rights" and that Officer Ficek "did not know what constitutes
5	probable cause to arrest a citizen because of inadequate training." Dkt. 1-1, ¶ 5.3. Ficek
6	did not arrest Parker, and there are no allegations that he participated even in the
7	preparation for his arrest. Ficek did not even engage with Parker until after his arrest.
8	Thus, even if Parker could show that the City had a deficient training program that could
9	be said to represent municipal policy, which he has not, the City's training of Ficek
10	regarding probable cause and arrests did not lead to any violation of Parker's
11	constitutional rights.

12	Therefore, the City's motion for summary judgment on Parker's *Monell* claim is
13	GRANTED and that claim against the City is DISMISSED with prejudice.

14	**3.    Outrage**

15	Ficek and the City argue that Parker's outrage claim fails because Ficek's conduct
16	was not outrageous as a matter of law. Dkt. 41 at 10–12. Parker argues that Ficek's
17	conduct was outrageous because he intentionally or recklessly disregarded the lack of
18	probable cause to arrest and detain Parker. Dkt. 50 at 17–19. Defendants reply that
19	Parker's allegation that he was innocent of the crime for which he was arrested, based on
20	probable cause, is insufficient to establish outrage. Dkt. 57 at 10. They also assert that
21	Ficek did not arrest Parker, draft the probable cause statement, or participate in his
22	prosecution. *Id.*

1    To prevail on a claim for the tort of outrage, also known as intentional infliction of
2 emotional distress, a plaintiff must prove that (1) the defendant engaged in extreme and
3 outrageous conduct, (2) the defendant intentionally or recklessly inflicted emotional
4 distress on the plaintiff, and (3) the conduct actually resulted in severe emotional distress
5 to the plaintiff. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003). "Any claim of outrage
6 must be predicated on behavior so outrageous in character, and so extreme in degree, as
7 to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
8 intolerable in a civilized community." *Sutton v Tacoma Sch. Dist. No. 10*, 180 Wn. App.
9 859, 869 (2014) (internal quotations and citations omitted).

10    Ficek did not participate in Parker's arrest. Thus, even if the arrest was
11 "outrageous," Ficek cannot be held liable for it. Moreover, viewing the facts in the light
12 most favorable to Parker, the officers conducting his arrest did not engage in extreme and
13 outrageous conduct. Even assuming Parker only intended to engage in role play, that does
14 not negate the fact that the officers likely had probable cause for his arrest before they
15 were aware of his explanation. *See Cassette v. King Cnty.*, 625 F. Supp. 2d 1084, 1091
16 (W.D. Wash. 2008) (holding probable cause precluded the plaintiff's outrage claim based
17 on conduct related to her arrest).

18    Therefore, Ficek's motion for summary judgment on Parker's outrage claim is
19 GRANTED, and that claim is DISMISSED with prejudice. Any vicarious liability claim
20 against the City based on Parker's outrage claim against Ficek is similarly DISMISSED.

### 4. False Arrest

Ficek and the City argue that because there was probable cause for Parker's arrest, there was no false arrest as a matter of law. Dkt. 41 at 12. Parker argues that a reasonable officer in Ficek's position "would have concluded that there was a fair probability that no crime had been committed" and that Parker was only engaged in role play. Dkt. 50 at 16–17. In reply, Defendants reiterate that Ficek did not arrest Parker and that the arresting officers nevertheless had probable cause to arrest him. Dkt. 57 at 11–12.

"[P]robable cause is a complete defense to an action for false arrest and imprisonment." *Hanson v. City of Snohomish*, 121 Wn.2d 552, 563 (1993). Again, Ficek did not participate in Parker's arrest, and the officers in this case likely had probable cause to make an arrest even if they were mistaken as to Parker's true intentions.

Therefore, Ficek's motion for summary judgment on Parker's false arrest claim is GRANTED, and that claim is DISMISSED with prejudice. Any vicarious liability claim against the City based on Parker's false arrest claim against Ficek is similarly DISMISSED.

### 5. Negligent Infliction of Emotional Distress

Ficek and the City argue that the Parkers failed to allege that either Ficek or the City owed them any duty of care as individuals and that even if they did owe them a duty, the Parkers failed to establish a genuine issue of material fact regarding breach of that duty or proximate cause. Dkt. 41 at 12–16. The Parkers did not respond to that argument. *See* Dkt. 50. The Court agrees that the Parkers failed to allege that Ficek or the City owed them any specific duty of care or that they breached any such duty causing them damage.

1 Therefore, Ficek's motion for summary judgment on the Parkers' negligent
2 infliction of emotional distress claim is GRANTED, and that claim is DISMISSED with
3 prejudice. Any vicarious liability claim against the City based on the Parkers' negligent
4 infliction of emotional distress claim against Ficek is similarly DISMISSED.

### 6. Abuse of Process

Ficek and the City argue that Parker offered no evidence suggesting that they "issued any legal process to the plaintiffs or did so for an improper ulterior purpose." Dkt. 41 at 16. Parker argues that the ulterior motive was money, that Parker was the subject of a "Net Nanny Sting" funded by Underground Railroad, and operated by Detective Rodriguez, and that the Washington State Partol had to continue to operate stings, or it would lose the program's funding. Dkt. 50 at 19–20. Defendants reply that Parker has still failed to present evidence that Defendants issued legal process against him or that they did so for an improper ulterior purpose and that no specific allegations were made against Ficek or the City specifically. Dkt. 57 at 12.

To assert an abuse of process claim, a plaintiff must show "(1) the existence of an ulterior purpose—to accomplish an object not within the proper scope of the process—and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings." *Fite v. Lee*, 11 Wn. App. 21, 27 (1974). "The mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process." *Id.* at 27–28.

1  Parker did not present any evidence that Ficek issued any legal process against
2  him or did so for an ulterior purpose. Ficek participated only in his post-arrest interview,
3  not the arrest or initiation of any legal proceeding.
4  Therefore, Ficek's motion for summary judgment on Parker's abuse of process
5  claim is GRANTED and that claim is DISMISSED with prejudice. Any vicarious
6  liability claim against the City based on Parker's abuse of process claim against Ficek is
7  similarly DISMISSED.

**B.  Motion to Continue**

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its oppositions, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The party seeking a continuance "must make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (internal quotation omitted).

The Parkers argue that their new counsel needs more time to conduct discovery because he recently took over this case after their previous attorney passed away unexpectedly. The declaration submitted by the Parkers' attorney explains that, if granted additional time for discovery, he would seek "[m]ore detailed facts regarding Detective Ficek's interaction with others [sic] team members, training, and knowledge" and "[r]ecords regarding Mr. Parker's injuries relevant to the Plaintiff's Claim of Outrage." Dkt. 49, ¶¶ 6, 7. He does not explain how those facts would preclude summary judgment.

1  Defendants argue that a continuance is not warranted because the additional discovery the
2  Parkers' counsel seeks would not change the outcome of the pending summary judgment
3  motion. Dkt. 56.
4        It is unclear, and unexplained, how Ficek's interactions with his team members,
5  his training, or his knowledge would create an issue of material fact pertaining to any of
6  the claims against Ficek. While deficient training can support a *Monell* claim in certain
7  situations, any such deficient training program would be insufficient to establish a viable
8  claim in this case. Parker only alleged that the City's training of Ficek regarding probable
9  cause and arrest was deficient and amounted to a policy which violated his Fourth
10 Amendment rights. As already explained, Ficek did not participate in Parker's arrest in
11 any way. Any information regarding Ficek's training would not support a *Monell* claim,
12 nor would it create an issue of material fact for any of the other claims he asserts against
13 Ficek and the City.
14       As to records regarding Parker's injuries, those would also not help him overcome
15 a summary judgment motion. His injuries are certainly relevant to this case, but he need
16 not show the extent of his injuries to overcome summary judgment.
17       Parker failed to meet the requirements of Rule 56(d), and the evidence he seeks
18 would not defeat the instant summary judgment motion. His motion for a Rule 56(d)
19 continuance is therefore DENIED.
20 \\
21 \\
22 \\

## III.  ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs Quentin M. Parker and Katherine R. Parker's Motion to Continue, Dkt. 46, is **DENIED** and that Defendants Aaron Ficek and the City of Olympia's Motion for Summary Judgment, Dkt. 41, is **GRANTED**.

All claims against Aaron Ficek and the related claims against the City of Olympia are **DISMISSED with prejudice**. The Clerk shall terminate Ficek and the City as parties.

Dated this 16th day of May, 2022.

BENJAMIN H. SETTLE
United States District Judge