1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

QUENTIN M. PARKER, et al.,

     Plaintiffs,

 v.

STATE OF WASHINGTON, et al.,

     Defendants.

CASE NO. C21-5258 BHS

ORDER

THIS MATTER is before the Court on Defendants Thurston County and former Deputy Prosecuting Attorney Shawn Horlacher's motion for summary judgment, Dkt. 77, and the Defendants State of Washington, Washington State Patrol (WSP), Carlos Rodriguez, Kristi Pohl, Darrell Noyes, Travis Calton, Maurice Rincon, William Steen, and James Taylor's motion for summary judgment, Dkt. 84.

Plaintiff Quentin Parker[1] responded to an online advertisement posted by law enforcement as part of a larger undercover operation known as the "Net Nanny Stings," which was a multi-jurisdiction law enforcement task force aimed at those sexually

---

[1] Quentin Parker's wife, Katherine Parker, is also a plaintiff on a subset of claims. This order uses the singular Parker for clarity and ease of reference.

1  exploiting children. A non-profit organization, Operation Underground Railroad (OUR),

2  was also involved.

3      In February 2019, Defendant Carlos Rodriguez, an undercover WSP detective

4  posing a mother of three children  under the username "RowdyRhonda720," posted an

5  advertisement on "SKOUT," a dating application,[2] offering her children for sexual

6  exploitation:

7          "New in town. Single mom. I have three girls. Looking for like minded
           people that are into ddlg/incest/young taboo. No curious wanted. Only
8          serious. Young fun. Taboo"

9  Dkt. 1-1 at 8.

10     Parker responded, engaged with the officer online, and ultimately provided his

11  phone number. Defendant Detective Kristi Pohl then posed as RowdyRhonda720 and

12  began texting back and forth with Parker. These texts include about 150 messages, and

13  involve discussions of "young taboo," the ages of the "littles" that Parker sought, and the

14  "mother's" rules about penetration, lubrication and condoms, and the fact that the girls

15  liked candy. *See* Dkt. 43 at Ex. 2.

16     Pohl eventually arranged a meeting and Parker arrived, with lube, condoms, and

17  candy. He was arrested by WSP troopers. Thurston County Deputy Prosecutor Horlacher

18  reviewed the evidence and determined there was sufficient evidence to charge Parker

19  with two counts of attempted rape of a child in the first degree and one count of

20

21      [2] Parker emphasizes that SKOUT is an adults-only website, apparently suggesting that he
22  would not seek minors there, but Rodriguez was posing as an adult, offering access to minor
    children.

attempted rape of a child in the second degree. Horlacher filed a Declaration of Probable Cause in Thurston County charging Parker with these offenses.. Dkt. 43 at 16. Parker moved to suppress the evidence and to dismiss the criminal charges based on government misconduct. *Id*. at 20.

Parker's primary defense in the criminal case was, and his primary claim in this case is, that the acronym "ddlg" means Daddy Dom/Little Girl," and that it *proves* he was interested only in role-playing with another consenting adult, not in actually having sex with children. Thurston County Judge Dixon heard and denied the motions, concluding that "ddlg" could have different interpretations but that Parker's asserted interpretation was not a "roadblock or a legal deterrent to a valid arrest." *See* Dkt. 78 at 23. In March 2020, Deputy Prosecutor Zhou (Horlacher's successor) dismissed the charges without prejudice. Dkt. 43 at 20.

In February 2021, Parker filed suit in Thurston County Superior Court. He alleges that the defendants violated his Fourth and Fourteenth Amendment rights, and asserts 42 U.S.C. § 1983 claims for illegal seizure, false arrest, excessive force, and malicious prosecution, and state law claims for abuse of process, and intentional and negligent infliction of emotional distress. Dkt. 1-1. The defendants removed the case here. Dkt. 1.

Parker sued the Washington State Patrol and its employees involved in the Net Nanny Sting operation (including Rodriguez and Pohl). He also sued Thurston County, Deputy Prosecutor Horlacher, the City of Olympia, and Olympia police officer Aaron Ficek. The Court previously dismissed Parker's claims against Olympia and Ficek on

summary judgment. Dkts. 41 and 67. Parker's defamation claim against OUR has been settled. Dkt. 30.

The remaining County and State defendants now seek summary judgment on Parker's claims against them.

Horlacher argues that he is entitled to absolute prosecutorial immunity and to qualified immunity[3] from Parker's claims. He and Thurston County assert that there was probable cause to arrest Parker for attempted child rape, and that Parker's "role playing" explanation for his actions does not change that fact. They argue that the existence of probable cause defeats Parker's malicious prosecution claim, and that the criminal court's prior determination that there was probable cause has collateral estoppel effect. They argue that Parker's state law outrage, negligent infliction of emotional distress, and abuse of process claims fail as a matter of law.

Parker asserts that Horlacher is not entitled to prosecutorial immunity because, acting as a complaining witness, he made "false statements" in his affidavit. Dkt. 80 at 7. He argues that Horlacher is similarly not entitled to qualified immunity. He argues there was no probable cause as a matter of law because he claimed he was interested only in role play, and Horlacher failed to include that assertion in his affidavit. He asserts that these actions support his malicious prosecution claim. He argues that collateral estoppel

---

[3] Horlacher and Thurston County argue that Parker did not assert a § 1983 claim against either of them.

1   does not apply because Detective Rodriguez intentionally hid evidence in the Net Nanny

2   cases[4] generally, and that the probable cause determination in his case was not final.

3          The State defendants similarly point out that Parker has not asserted a § 1983

4   (Fourteenth Amendment) due process claim, but rather an "unreasonable seizure" claim,

5   properly asserted under the Fourth Amendment. Dkt. 84 at 10. They argue there was

6   probable cause to arrest Parker for attempted child rape, as a Thurston County

7   commissioner and judge determined. The State defendants also assert they are entitled to

8   qualified immunity, and that Parker's state law claims fail as a matter of law. Dkt. 84.

9          Parker asserts that there is at least a question of fact about the existence of

10  probable cause, and that the State defendants are not entitled to qualified immunity

11  because they falsified and omitted material facts from their reports. He argues that there

12  is evidence supporting his malicious prosecution, defamation, outrage, judicial deception,

13  and negligence claims. Dkt. 96.

14         As the State defendants' reply points out, Parker does not defend, and can be

15  deemed to have abandoned, his § 1983 excessive force and failure to intervene claims

16  and his state law negligent infliction of emotional distress and abuse of process claims.

17  Dkt. 99 at 2. The summary judgment motion on those claims is **GRANTED**, and they are

18  **DISMISSED** with prejudice.

19         The remaining issues are addressed in turn.

20  _____

21     [4] Parker's complaints about the Net Nanny Stings generally, and what he claims were the real motivations behind that program, were persuasively rejected when asserted to support a due process claim in a similar case in this District. *See Sanchez v. State of Washington, et al.*, No. 21-

22  5915-RBJ at Dkt. 96.

# I.   DISCUSSION

## A.   Summary Judgment Standard

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without

1    merely relying on allegations in the pleadings, that there remain genuine factual issues.

2    *Anderson*, 477 U.S. at 248.

3    **B.    Horlacher's summary judgment motion is granted.**

4        **1.    Horlacher is entitled to absolute prosecutorial immunity.**

5        Horlacher's primary defense is that he acted solely as a prosecutor—an

6    advocate—and that he is absolutely immune from Parker's state law claims. The

7    exception to this immunity is when a prosecutor acts as a *witness* and testifies under

8    penalty of perjury as to the facts supporting probable cause. *Kalina v. Fletcher*, 522 U.S.

9    118, 129–31 (1997). Horlacher argues he acted only as an advocate, and that even Parker

10   alleges that the "perjury" was in Horlacher stating he had read the police reports. Parker's

11   complaint alleges that Horlacher "failed to investigate the facts of Parker's 'ddlg'

12   explanation" and "charged him with legal activity." Dkt. 77 at 9 (citing Dkt. 1-1 at 12).

13   Horlacher also asserts, correctly, that the selection of particular facts in the certification

14   to provide probable cause is undertaken in the role of an advocate and is therefore

15   absolutely protected. Dkt. 77 at 9 (citing *Kalina*, 522 U.S. at 130).

16       Horlacher argues that he is qualifiedly immune from any § 1983 constitutional

17   claim against him for the same reasons. Parker does not allege that any fact included

18   Horlacher's probable cause determination was not true; his complaint is that Horlacher

19   did not investigate or include Parker's asserted defense that Detective Rodriguez's use of

20   the acronym "ddlg" negated all his other statements and conduct. Horlacher argues that

21   any § 1983 claim based on a prosecutor's failure to present exculpatory evidence at the

22   preliminary hearing, and presenting testimony without independently investigating its

1  credibility, is precluded by prosecutorial immunity. Dkt. 77 at 11 (citing *Morley v.*

2  *Walker*, 175 F.3d 756, 759–60 (9th Cir. 1999)).

3      Parker responds that Horlacher's assertion that Parker "responded to a detective

4  posing as a mother offering her children for sexual exploitation" is a "false statement of

5  material fact." Dkt. 80 at 5. Instead, he claims, the truth is that he responded to a SKOUT

6  profile of an adult female, for legal BDSM[5] role-playing. *Id.*

7      This is the core of Parker's defense to the criminal charges he faced and of his

8  claims here: he asserts that he was interested only in legal roleplaying between

9  consenting adults, and that the use of the acronym "ddlg" is conclusive proof of the

10  veracity of this claim. Parker claims he never intended to have sex with any minors, and

11  the extensive dialogue and actions pointing to the opposite conclusion are negated by the

12  use of the acronym "ddlg."

13      Parker effectively claims that Horlacher (and the other defendants) should have

14  accepted and understood his "ddlg" explanation, and that, in failing to do so, he lied in

15  his certificate of probable cause. The Court disagrees.

16      There is no evidence that Horlacher testified as a witness to any fact that was not

17  true. His prosecutorial, discretionary decision to not include (or accept) Parker's "ddlg"

18  "explanation" for his conduct is not actionable as a matter of law. "Probable cause does

19  not require officers to rule out a suspect's innocent explanation for suspicious facts."

20

21

22      [5] "Bondage, Discipline, Sadism, and Masochism."

1    *O'Doan v. Sanford*, 991 F.3d 1027, 143 (9th Cir. 2021). Horlacher is entitled to absolute

2    prosecutorial immunity from all of Parker's state law claims against him.

3         Horlacher's summary judgment motion on this basis is **GRANTED**, and all of

4    Parker's state law claims against him are **DISMISSED** with prejudice.

5         **2.      Horlacher is entitled to qualified immunity.**

6         The Court agrees that Parker's complaint does not assert a § 1983 claim against

7    Horlacher for violating his constitutional rights. *See generally* Dkt. 1-1. Even if Parker

8    had asserted a due process claim against Horlacher, however, and even if Horlacher was

9    not entitled to absolute prosecutorial immunity, Horlacher would be entitled to qualified

10   immunity.

11        Under the qualified immunity doctrine, "government officials performing

12   discretionary functions generally are shielded from liability for civil damages insofar as

13   their conduct does not violate clearly established statutory or constitutional rights of

14   which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

15   (1982). The purpose of the doctrine is "to protect officers from the sometimes hazy

16   border between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198

17   (2004) (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 206

18   (2001)).

19        A two-part test resolves claims of qualified immunity by determining whether

20   plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so,

21   "whether the right at issue was clearly established at the time of defendant's alleged

22

1  misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation marks

2  omitted).

3      Qualified immunity protects officials "who act in ways they reasonably believe to

4  be lawful." *Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting

5  *Anderson v. Creighton*, 483 U.S. 640, 641 (1987)). Although it is fact-specific, the

6  reasonableness inquiry is objective, evaluating "whether the officers' actions are

7  'objectively reasonable' in light of the facts and circumstances confronting them, without

8  regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Even if the

9  officer's decision is constitutionally deficient, qualified immunity shields him from suit if

10  his misapprehension about the law applicable to the circumstances was objectively

11  reasonable. *See Brosseau*, 543 U.S. at 198.

12      Furthermore, qualified immunity protects officers not just from liability, but from

13  suit: "it is effectively lost if a case is erroneously permitted to go to trial," *Liberal v.*

14  *Estrada*, 632 F.3d 1064 (9th Cir. 2011), and therefore, the claim should be resolved "at

15  the earliest possible stage in litigation," *Creighton*, 483 U.S. at 646 n.6. The purpose of

16  qualified immunity is "to recognize that holding officials liable for reasonable mistakes

17  might unnecessarily paralyze their ability to make difficult decisions in challenging

18  situations, thus disrupting the effective performance of their public duties." *Mueller v.*

19  *Auker*, 576 F.3d 979, 993 (9th Cir. 2009). Because it is inevitable that law enforcement

20  officials will in some cases reasonably but mistakenly conclude that probable cause is

21  present, an officer is entitled to qualified immunity when their conduct is objectively

22  reasonable. *See Garcia*, 639 F.3d at 1208; *Creighton*, 483 U.S. at 639.

The salient question is whether the state of the law at the time gives officials "fair warning" that the conduct is unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted).

Parker has not identified any analogous authority supporting a § 1983 claim against a prosecutor for the decisions he made about which of the facts developed by law enforcement officers to include in his affidavit or certificate of probable cause. He has not identified a single falsehood that Horlacher chose to include: Rodriguez and Pohl did pose as a mother online, offering her fictitious children for sexual exploitation, and Parker did respond, in graphic detail. He asserts—and for purposes of this motion, the Court accepts—that he did not intend to have sex with a minor; he intended only to role play with an adult. But that defense to the charges does not negate the probable cause the officers had to arrest him based on everything else he said and did. It is not conclusory or controversial to observe that criminal suspects commonly assert that they did not do what the evidence suggests they were doing.

Horlacher's motion on qualified immunity as to any federal constitutional claim is **GRANTED**.

**C.      Thurston County's summary judgment motion is granted.**

Thurston County argues that Parker did not assert a § 1983 *Monell* claim against it and that, even if he did, he failed to provide any evidence in support of it. Parker does not

1    allege or argue that Thurston County violated any of his rights other than his claims

2    against Horlacher.

3          To set forth a claim against a municipality under § 1983, a plaintiff must show that

4    the defendant's employees or agents acted through an official custom, pattern or policy

5    that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the

6    entity ratified the unlawful conduct. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

7    690–91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991).

8    Under *Monell*, a plaintiff must allege: (1) that a municipal employee violated a

9    constitutional right; (2) that the municipality has customs or policies that amount to

10   deliberate indifference; and (3) that those customs or policies were the "moving force"

11   behind the constitutional right violation. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397,

12   403–04 (1997).

13         Parker has not done so. He has not alleged or offered facts supporting any claim

14   against Thurston County itself, and he has not established a material question of fact

15   concerning a claim against Horlacher for which Thurston County would be vicariously

16   liable. His Response to the pending motion, Dkt. 80, devotes pages to the shortcomings

17   of the WSP and OUR, but does not articulate or support any claim against Thurston

18   County. Thurston County's summary judgment motion, Dkt. 77, is **GRANTED** and all of

19   Parker's claims against it are **DISMISSED** with prejudice.

20

21

22

**D.      The State Defendants' summary judgment motion is granted.**

**1.      There was probable cause to arrest Parker.**

The State and its employees seek summary judgment for similar reasons. They argue first that there was probable cause to believe that Parker had attempted to rape a child, notwithstanding his explanation that he instead intended only to role play. The State concedes that an officer may not ignore exculpatory evidence that would negate probable cause, but argues that an officer is "not required to rule out a suspect's innocent explanation for suspicious facts." Dkt. 84 at 8 (citing *O'Doan v. Sanford*, 991 F.3d 1027, 143 (9th Cir. 2021)). It asserts that "it is not the rule that police must investigate a defendant's legal defenses prior to making an arrest." *Id*.

Parker argues that, under the totality of the circumstances, there was no probable cause to arrest him for attempted rape of a child. He reiterates that "ddlg" means that he intended to role-play, not actually have sex with minors, and criticizes Rodriguez and Pohl for not recognizing that and for never looking the phrase up on the Urban Dictionary. Dkt. 96 at 5–6. He complains that Pohl's messages to him never indicated that this was real and not role play. *Id*. He argues that, if a party to such a conversation does not intend to role play, the common indicator is for that party to state, "no RP," which did not occur here. *Id*. at 8. He argues that the State defendants' "failure to learn the subject matter" is "unconscionable and reckless"—he blames them for not knowing that, notwithstanding all his other words and conduct, he intended only to role play.

Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. *Adams v. Williams*,

407 U.S. 143, 149 (1972) (citation omitted). Probable cause requires "only the probability, and not a prima facie showing, of criminal activity." *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). In determining whether probable cause exists, "[a]ll facts known to the arresting officer and all reasonable inferences that could be drawn are considered." *United States v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983) (citation omitted).

Parker concedes that "probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Dkt. 96 at 3 (citing *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). But the cases upon which he relies to demonstrate that the State defendants should have known that he was not seeking sex with minors are not analogous. Parker claims that *Briscoe v. City of Seattle*, 483 F. Supp. 3d 999 (W.D. Wash. 2020), and *Bier v. City of Lewist*on, 354 F.3d 1058 (9th Cir. 2004), support his claim that the officers should have either known or more-fully investigated what his messages and conduct really meant.

*Briscoe* involved a fatal police shooting. An officer had seen a convicted felon, Taylor, with a gun on his hip 30 minutes before he and another officer confronted Taylor, with their guns drawn. The officers could not confirm that he had a weapon when they confronted him, but they shot him when they thought he was reaching for a weapon that he did not actually have. Judge Thomas Zilly of this District denied the officers' motion for summary judgment on qualified immunity, concluding there was a question of fact

whether they reasonably believed Taylor was armed—whether they had probable cause to seize him—as they approached him:

> Given the amount of time and reasons that Taylor could not be observed, and his return to the scene as a passenger in a vehicle occupied by two other people, one of whom later denied seeing him with a gun on the day of the shooting, the Court concludes that "room for a difference of opinion" exists concerning whether the facts and their reasonable inferences indicate that Taylor's seizure was supported by probable cause.

*Briscoe* at 1010. *Brier* involved an arrest based on a violation of a protection order with which the officers were admittedly not familiar, and which the plaintiff did not actually violate. *Brier* at 171.

The Court does not agree that either case provides support for Parker's claims. *Brier* is not analogous. *Briscoe* turned on the fact that the probable cause was "stale;" not on the claim that the officers made deliberate or recklessly false statements or omissions. Parker makes the latter assertion, but he has not identified any false statements leading to his arrest. Instead, he argues that he did not intend to have sex with minors. But an officer reading the messages and observing the conduct—Parker showed up at the agreed time and place with condoms, lube, and candy for the minor girls, as he was instructed to do if he wanted to penetrate the older two—could quite reasonably conclude that Parker intended to have sex with minors.

Parker argues that the Thurston County Superior Court's determination of probable cause does not have collateral estoppel effect because it was not "final." The State defendants point out that the result of a suppression hearing in a criminal case does have preclusive effect in a subsequent civil case. Dkt. 99 at 7 (citing *Ayers v. City of*

*Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990)). Whether it is bound to or not, the Court agrees with the Thurston County Superior Court's determination on this record. This Court stated as much in its prior summary judgment order: "Even assuming Parker only intended to engage in role play, that does not negate the fact that the officers had probable cause for his arrest before he told them he intended to engage in role play." Dkt. 67 at 7. Law enforcement does not have an obligation to definitively rule out a suspect's innocent explanation prior to making an arrest. *See* Dkt. 99 at 4 (citing *O'Doan*). Probable cause is a much lower standard than the beyond a reasonable doubt standard required to convict.

The existence of probable cause to arrest Parker is fatal to his § 1983 claims, and the State defendants' summary judgment motion on that basis is **GRANTED,** and Parker's § 1983 claims against them are **DISMISSED** with prejudice.

### 2. The State defendants are entitled to qualified immunity.

The State also argues that its employees have qualified immunity from Parker's § 1983 constitutional against them. The Court concludes that the State did have probable cause, and thus that they did not violate Parker's constitutional rights. Even if they did not have probable cause, however, Parker has cited no authority that would have given them "fair warning" that they had to further investigate his real intentions or his later-asserted, innocent explanation before arresting him. There is authority to the contrary, discussed above. The State defendants' summary judgment motion on this basis is similarly **GRANTED**.

1       **3.     Parker's malicious prosecution claim fails as a matter of law.**

2       The State defendants argue that probable cause is also a complete defense to

3 Parker's malicious prosecution claim. As discussed above, the Court agrees. *See Clark v.*

4 *Baines*, 150 Wn.2d 905, 912 (2004) ("Although the malicious prosecution plaintiff must

5 prove all required elements, malice and want of probable cause constitute the gist of a

6 malicious prosecution action, as such, proof of probable cause is an absolute defense.").

7       The officers' arrest based on probable cause is also insulated from a malicious

8 prosecution claim by the fact that Prosecutor Horlacher filed a criminal complaint.

9       "Typically, in constitutional tort cases the '[f]iling of a criminal complaint

10 immunizes investigating officers . . . because it is presumed that the prosecutor filing the

11 complaint exercised independent judgment in determining that probable cause for an

12 accused's arrest exists at that time.'" *Caldwell v. City & Cty. of San Francisco*, 889 F.3d

13 1105, 1115 (9th Cir. 2018) (quoting *Smiddy v. Varney* (*Smiddy I*), 665 F.2d 261, 266 (9th

14 Cir. 1981)). Courts have applied this presumption of prosecutorial independence in

15 malicious prosecution cases. *See, e.g., Newman v. Cty. of Orange*, 457 F.3d 991, 994 (9th

16 Cir. 2006). To rebut the presumption, a plaintiff must produce evidence "that the district

17 attorney was subjected to unreasonable pressure by the police officers, or that the officers

18 knowingly withheld relevant information with the intent to harm [him], or that the

19 officers knowingly supplied false information." *Id.* (quoting *Smiddy v. Varney* (*Smiddy*

20 *II*), 803 F.2d 1469, 1471 (9th Cir.1986)). Parker has provided no evidence that any

21 defendant acted with malice or recklessness.

22

1     The State defendants' motion for summary judgment on Parker's malicious

2  prosecution claim is **GRANTED**, and that claim is **DISMISSED** with prejudice.

3       **4.**    **Parker's defamation claim fails as a matter of law.**

4     Parker alleges that the State defendants defamed him when his case was included

5  in a WSP press release about the Net Nanny Stings. To prevail on a defamation claim, the

6  Plaintiff must show (1) falsity; (2) an unprivileged communication; (3) fault; and (4)

7  damages. *Mohr v. Grant*, 153 Wn.2d 812, 822 (2005).

8     The State defendants correctly argue that a plaintiff asserting a defamation claim

9  based on the information officers provide to the public faces a high burden:

10       "Statements of police officers in releasing information to the public and
11       press serve the important functions of informing and educating the public
         about law enforcement practices." *Bender v. City of Seattle*, 664 P.2d 492,
12      504 (Wash. 1983). Accordingly, police officers are protected by a qualified
         privilege (rather than an absolute privilege) in releasing information to the
13      press and public. *Id*. A plaintiff has the burden to establish an abuse of that
         qualified privilege to recover; the standard of proving abuse of the privilege
14      is high. *Id*. The plaintiff must show abuse of the privilege by clear and
         convincing evidence. *Id*. "[K]nowledge or reckless disregard as to the
15      falsity of a statement is necessary to prove the abuse of a qualified
         privilege." *Id*.

16  Dkt. 99 at 9. They argue that Parker has failed to point to any knowingly false statement,

17  and that he cannot establish the requisite recklessness with clear and convincing

18  evidence.

19     Parker acknowledges these authorities but argues that the qualified privilege "does

20  not include license to make gratuitous statements concerning the facts of a case or

21  disparaging the character of other parties to an action." Dkt. 96 at 19 (citing *Bender*, 664

22  P.2d 492).

But Parker has not shown that any defendant made a knowingly false or reckless statement about him or the criminal case against him. He cannot support a defamation claim as a matter of law. The State defendants' summary judgment motion on this claim is **GRANTED**, and it is **DISMISSED** with prejudice.

### 5.    Parker's outrage claim fails as a matter of law.

Parker asserts that the State defendants' conduct was outrageous. He asserts primarily that the WSP and its defendant employees had a financial incentive to operate the Net Nanny Stings.[6] He reiterates that Rodriguez and Pohl should have known the connotation of "ddlg" and should have included "No RP" to denote "real" rather than "role playing."

To prevail on a claim of outrage, or intentional infliction of emotional distress, the plaintiff must show "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of emotional distress." *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 792 (2014). "Although the three elements are fact questions for the jury, the first element of the test goes to the jury only after the court determines if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Spicer v. Patnode*, 9 Wn. App. 2d 283, 292–93 (2019) (citations and internal quotations omitted).

The conduct in question must be "[s]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

---

[6] There is no evidence that any defendant had a personal financial stake in the outcome of the Net Nanny Stings.

1    and utterly intolerable in a civilized community." *Grimsby v. Samson*, 530 Wn.2d 52, 59

2    (1975) (quoting Restatement (Second) of Torts § 46 cmt. d). "[I]t is not enough that a

3    'defendant has acted with an intent which is tortious or even criminal, or that he has

4    intended to inflict emotional distress, or even that his conduct has been characterized by

5    "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages

6    for another tort.'" *Id.* (quoting Restatement § 46 cmt. d).

7        The State defendants argue that reasonable minds could not differ as to whether

8    the conduct alleged here was so extreme as to be "utterly intolerable" in a civilized

9    society. Dkt. 84 at 17. The Court agrees, as it did in granting the Olympia defendants'

10   summary judgment motion. Dkt. 67 at 10. There is no evidence supporting the claim that

11   any defendant intentionally harmed Mr. Parker, knowing he was innocent. The State

12   defendants' summary judgment motion on this claim is **GRANTED** and it is

13   **DISMISSED** with prejudice.

14       **6.    Parker's judicial deception claim fails as a matter of law.**

15       To state a claim for judicial deception, a plaintiff must be able to demonstrate (1)

16   deliberate falsehood or reckless disregard for the truth and (2) the search and arrest would

17   not have occurred but for the dishonesty. *Chism v. Washington*, 661 F.3d 380, 387 (9th

18   Cir. 2011).

19       Parker's judicial deception claim is based on his allegation that the WSP, and

20   detectives Rodriguez and Pohl, had an undisclosed financial incentive to establishing

21   probable cause. He alleges that Rodriguez did not disclose to the Thurston County

22

Superior Court the "financial incentives" at stake, including "OUR's payment for

Rodriguez's travel to promote OUR." Dkt. 96 at 27.

It is not clear how this information would have affected the Court's review of the

facts in this case, and it does not address the elements of this claim. It is clear that the

omission does not amount to actionable judicial deception.

The remainder of Parker's judicial deception claim is based on the same assertions

discussed above; that the use of the acronym "ddlg" and the failure to use the phrase "No

RP" in the SKOUT posting and subsequent texts messages proves that he intended only

to role play, and law enforcement should have known it. Even if that were true, it does

not amount to judicial deception. The State defendants' summary judgment motion on

this claim is **GRANTED** and it is **DISMISSED** with prejudice.

### 7.    Parker's negligence claim fails as a matter of law.

Finally, Parker asserts a negligence claim based on the same allegations discussed

throughout this order. The State defendants read his response to their motion as asserting

negligent training and negligent supervision claims. Dkt. 99 at 11 (citing Dkt. 96 at 25).

The failure to train claim alleges that detectives Rodriguez and Pohl were negligently

trained, and they would have known what "ddlg" meant, and that Parker did not intend to

have sex with minors, if they were properly trained. Parker does not describe his failure

to supervise claim. Dkt. 96 at 26.

Negligent training and supervision claims are improper (as unnecessary) when the

employer concedes that the actions occurred in the employee's scope of employment—a

concession the WSP makes. *See La Plant v. Snohomish Cty.*, 167 Wn. App. 476, 480

1  (2011) ("[A] claim for negligent hiring, training, and supervision is generally improper

2  when the employer concedes the employee's actions occurred within the course and

3  scope of employment."). There was ample evidence supporting the officers' belief that

4  Parker intended to have sex with minors, including his act of arriving at the meeting place

5  with condoms, lube, and candy, and his text statement that he "liked teens" but could

6  "deal with a six year old." Dkt. 43 at 5.

7      The State defendants' summary judgment motion on Parker's negligence claim is

8  **GRANTED** and it is **DISMISSED** with prejudice.

9          **II.   ORDER**

10      The Thurston County Defendants' summary judgment motion, Dkt. 77, is

11  **GRANTED**, and Parker's claims against the County and Horlacher are **DISMISSED**

12  with prejudice. The State defendants' motion for summary judgment, Dkt. 84, is similarly

13  **GRANTED**, and Parker's claims against defendants State of Washington, the

14  Washington State Patrol, Rodriguez, Pohl, Noyes, Calton, Rincon, Steen, and Taylor, are

15  **DISMISSED** with prejudice.

16      The Clerk shall enter a **JUDGMENT** and close the case.

17      **IT IS SO ORDERED**.

18      Dated this 17th day of July, 2023.

19

20

21  BENJAMIN H. SETTLE
    United States District Judge

22